And we will call the fifth case, Mancellari v. Bondi, and I believe we have counsel remote. Yes, good morning, your honors. May it please the court, Michael P. DiRamundo for the petitioner and SN Mancellari. This is a case where the Board of Immigration Appeals has denied a motion to open in 2020, about four and a half years after we had filed it. There are three reasons for the motion. I believe the strongest reason would be the fact that Mr. Mancellari is now eligible for cancellation of removal based on the fact that Pereira v. Sessions came out in 2018 and then Ms. Chavez came out in 2021. The board mistakenly says that the notice to appear was issued in 2014. It was not, it was issued in 2004. And while he did have 10 years, which is necessary for cancellation of removal in 2014, he had no qualifying relatives at that time. His oldest son was born in October of 2014. He's now 11. The daughter was born in 2017. He married his longtime girlfriend in 2022. He now has three qualifying relatives. Based on Pereira, he would be eligible because the notice to appear did not have the date and time of the hearing, date, time, and location of the hearing. So based on that alone, he would be eligible. He did prosecute his claim for asylum all the way through 2013, both through the immigration judge, the Board of Immigration Appeals, and then the case went up to the Seventh Circuit to this court. The fact that he did not move in 2014 has no bearing on the case, and he couldn't have moved in 2014 for a motion to reopen because he had no qualifying relatives. The second part of the motion was based on changed country conditions in Albania. And clearly, Dr. Fisher's affidavit, which is about 40 pages long, has about 20 pages of deteriorating factors in Albania from probably 2013 to 2020, the time that he needed to process the change in country conditions, because the case was over in 2013, the motion was filed in 2020. From page 10 to page 39 of Dr. Fisher's affidavit, it's continuous problems with the government of Albania going backwards. There's no rule of law there. There's only one party controlling the government at this point, the Socialist Party that took power in 2013 and then full power over the complete country in 2017. They have complete control over the police force, which is corrupt. The judiciary is corrupt, and Albania has been moving backwards ever since 2013. This would have a complete impact on Mr. Mancellari's application for asylum. It's based on a blood feud. It was based on the fact that his sister was being possibly taken into prostitution into Italy by Mr. Bahai, and Mr. Mancellari stopped that. And then there were threats made on his life and his family. Now it's even greater because he has a son, and the Canoon, which controls blood feuds in Albania, basically says that all males in the family can be killed if there is a blood feud. And his oldest child, his son, would be subject to this blood feud if he was to be returned to Albania. So I believe his asylum and his withholding of removal claim and his Convention Against Torture claim would be enhanced now that he has an 11-year-old son. The third argument was based on sua sponte reopening by the board to allow Mr. Mancellari to apply for what's called the 601A waiver. Because he entered without inspection in 2004, he would not be able to get his green card in the United States. His wife would sponsor him because she's a lawful permanent resident of the United States, and based on that, he would be able to go back to a U.S. embassy. He would have to find one not in Albania, but he'd have to process his green card. Once he makes that trip, he would be barred for 10 years from getting his green card. But the 601A waiver can now be done here in the United States. This was given to us by President Obama in March of 2013. So he can now file this and get approved here, and if it is approved, he can then go forward processing for consular processing. What does he have to show to get that waiver? He has to show hardship to his lawful permanent resident wife, who is the qualifying relative for that waiver, and he only obtained that qualifying relative through the marriage in 2022. Those are routinely granted, and I believe he would be eligible for that. The board said that there was no proof of the marriage submitted with the motion, and that clearly is not true. There was proof submitted with the marriage, and it's at the certified record of page 7 to 9, not only proof of the marriage, the marriage certificate, but also proof that his wife is a lawful permanent resident. So there are three reasons for sending this back. There are multiple errors by the Board of Immigration Appeals that makes it appear that it was not properly looked at. You know, they say that notice to appear is dated 2014, when it's really dated 2004. They said that he's filing for adjustment of status. We never said he was filing for adjustment of status. He would have to have been legally admitted to the United States on a visa or some other legal aspect, like parole, in order to be eligible for adjustment of status. He was not. We always said that he would be eligible for a 601A inadmissibility waiver, and they also said there was no proof of the marriage. The Board of Immigration Appeals also did not look at the motion cumulatively. They basically took it in piecemeal parts, and it really should have been done as a cumulative motion. Clearly, the changed country conditions and the hardship would go to his family, to his children, and to his wife, and would be extremely important with respect to his application cancellation of removal. I understand that there is a huge hurdle here with respect to asylum and withholding of removal and convention against torture. I do believe his strongest argument is the cancellation of removal, and also if the case is reopened, there's a very good possibility that the case could be terminated and he would be able to process the I-601A waiver. I would like to reserve two minutes for rebuttal. Thank you, Counselor. Thank you. Ms. Frayer? Good morning, Your Honors, and may it please the Court, Alison Frayer for the Attorney General. Ms. Frayer, I'm going to raise something at the beginning. I don't care whether you answer it now or later on. You're a master of your own oral argument. I really could not fathom your reply to the administrative issue, the last point on the sua sponte issue. You really were very laconic on that, and it's filled with administrative gobbledygook, very frankly. Could you please explain your understanding of your opponent's argument, and could you please give us clearly what your reply, what the government's position is on that? Sure, Your Honor. Before the Board, Petitioner filed the untimely motion to reopen seeking sua sponte reopening, which it's sort of a misnomer since you're seeking it, but it recognizes that the Board's discretionary authority is a creature of regulation, and they can reopen any case in which they've previously issued a decision. There's no judicial manageable standard to review that discretion, but it exists, and so Petitioner was not very clear before the Board. All Petitioner said was that he was married to an LPR, a lawful permanent resident, a green card and that he was going to be seeking this I-601 waiver. He did not claim that he had the necessary paperwork all in order to do that. To do that, he first needs to have his wife file a visa petition for him. He doesn't claim that that's been done or is pending, let alone that it's been approved. He also didn't claim that he was otherwise eligible to eventually adjust his status to his green card. What does otherwise eligible mean? It's a discretionary application, so you would need to prove that you merit discretion, though it's usually granted unless there's some issue. You would normally include things like a police report or an FBI report showing that you've never been arrested or convicted of any crimes. The administrative record had, of course, closed with the Board's prior decision in 2012, and now he's seeking reopening in 2020, so he would need to show that he hadn't been convicted or arrested of anything in that time period. That's something that would go towards your prima facie eligibility for adjustment. So the I-130, lack of convictions, and I would say those are probably the main ones that come up first. Eventually, there's a medical exam that you go through, but people don't do those early because they expire, so you can't send that to the Board that early. And so instead of putting together an entire packet or putting together a great legal theory, Fishner just said, I have been married and there's this I-601 waiver. The Board declined to reopen Sua Sponte, saying that he didn't set forth his eligibility for adjustment, and then mentioning that he hadn't been admitted, which he can overcome with that waiver, but he didn't show, he didn't put together anything to show hardship related to that waiver, which he will eventually need to show to have that waiver. If he will have that waiver approved, it would be as a result of hardship to his wife. He didn't put any of that evidence in at this time with the motion either. The Board said there was no evidence in the record about the marriage, which is not factually correct. However, that error is harmless where Petitioner failed to put together a strong legal theory before the Board, and where the Board has repeatedly said in published case law that Sua Sponte reopening is not appropriate on the basis of equities that are gained after the Petitioner has been ordered removed and has remained in the United States. That's been a long-standing principle. When people remain in the United States after having been ordered removed, they will frequently get married, have kids, get jobs, get degrees, things like that, as they live their lives. But those equities do not generally support a Sua Sponte reopening. And that conclusion of the Board's, that equities gained after the Petitioner has been ordered removed, that conclusion is true. It's based on case law. And it is an adequate basis for this Court to affirm, and it's an unreviewable basis for this Court to affirm, because this Court cannot consider the merits of the decision whether to reopen or not Sua Sponte. The Court only looks for constitutional infirmities or legal errors. And this Court has also said... But here we have a factual error, correct? Correct, a factual error. And the whole framework that the IJ is looking at isn't even the same theory that the Petitioner is seeking relief under. To the extent that the Board was not completely responsive to Petitioner's request, it is the result of Petitioner's failure to put forth a clear legal theory, where Petitioner isn't saying... So if we find that the Petitioner had a clear legal theory, or at least clear enough, do you lose? I think then this Court under Fuller and a few other cases would find that it has jurisdiction to review the claim. And then I think, no, we would still win where the... Even if he is eligible for adjustment, that's not... That's generally not considered sufficient for Sua Sponte reopening. So the Board was responding to the argument he raised, but the principle that they stated in their decision, that equities gained after the removal order do not generally support Sua Sponte reopening, that conclusion is sufficient for this Court to dismiss this portion of the petition for review. If the Court were to agree, then a remand would be necessary for the Board to exercise its discretion in the first instance. But I don't think that's necessary here, where the principle that the Board was applying has been stated in case law so many times, it's just not a good use of anyone's time to send it back, where even if he's eligible, that's not a basis for Sua Sponte... Eligible for adjustment with a waiver, which he hasn't shown. But even if he were, that's not a basis for Sua Sponte reopening. When it comes to the asylum claim, asylum withholding and convention against torture, the Board reasonably reviewed the evidence before it and concluded that there was no change in country conditions. And even if there had been a change in the relative power of the Mafia in Albania, that simply wasn't relevant or material to Mr. Mancellari's claim, where this Court has already affirmed that there is no nexus to a protected ground in his claim. It's the same claim that he's already raised and had rejected by the IJ, the Board, and this Court. With respect to the cancellation of removal claim, Mr. Mancellari argued here today that he couldn't apply for cancellation in 2014 because he didn't have a qualifying relative, but his son was born in 2014, just a little bit later in the year. And moreover, he never argued before the Board or in his briefs to this Court that the qualifying relative had anything to do with it. Instead, he thought that he got to wait until Pereira came out, but this Court has repeatedly rejected that in Mejia-Padilla and many other cases. So, if there are no further questions? Thank you, Counsel. Thank you. So, Counsel herself really doesn't understand the claim of the petitioner. Four times she said that Mr. Mancellari applied for adjustment of status. He never applied for adjustment of status. He's not eligible for adjustment of status. He's eligible for a provisional waiver. We cannot do the provisional waiver unless the case is reopened, because as long as he has the removal order, it precludes him. We notified the Board, and we notified the Board of the marriage in a letter supplementing the motion to reopen in February 15th of 2023. They completely ignored it. They said there was no evidence of the marriage or the fact that she was a local permanent resident. It's a factual error. The Court clearly has jurisdiction to review this based on the factual error. The cancellation of removal claim, Counsel basically says that he should have done it in 2014. Pereira didn't come out until 2018. He could not have done it before that. And Ms. Chavez didn't come out until 2021, you know, saying that you didn't need to do piecemeal notice, that the notice to appear was not sufficient by itself. So, he couldn't file that. We filed in 2020, and basically, he has the qualifying relatives. This entire case could change. He's been here now for 21 years, two U.S. citizen children, a lawful permanent resident wife. He's eligible for cancellation of removal based on Pereira. He prosecuted his claim for asylum for many, many years, nine years. The motion to reopen took another four and a half years, and they didn't even do the proper job. They have factual errors. Under this Court's case in Champion v. Holder, 626.3.952, you do have jurisdiction to review the motion. There's a legal error here. There's a factual error. There's more than one factual error. So, the Court clearly has jurisdiction. With respect to the asylum case, the case would be completely different if it was reopened based on the fact now that his son could be subject to the blood feud. His son is 11 years old. He'll be 12 this year. This case is completely different from Mejia. Mejia did not go forward with their claims as far as relief from removal. Mr. Mancellari has prosecuted and gone forward with all of his claims for relief from removal since 2004, since the very beginning when he came to the United States. We would ask the Court to reverse the Board of Immigration Appeals' decision to send this back to the Board with instructions to send it back to the immigration judge. He is eligible for cancellation. He's eligible for changed country conditions, and he's clearly eligible for I-601A waiver, which we cannot do at this point in time while proceedings are undergoing. Thank you so much for your time. Have a great day. Thank you, counsel. Take this case under advisement.